# CIRCUIT COURT OF BALTIMORE CITY.

Filed November 8, 1897.

JOHN CARROLL JOHNS, &C.,
VS.
JOHN KENSEY JOHNS, &C.

*Johns & Porter, J. Wilson Leakin, W. George Weld* and *Fisher, Bruce & Fisher* for plaintiffs.

*Fielder C. Slingluff, Oswald Tilghman* and *Charles G. Kerr* for defendants.

DENNIS, J.—

This bill is filed by the trustees under the will of the late Rev. Dr. Henry V. D. Johns, dated March 2nd, 1858, to

secure a construction of the following clause:

After describing certain property, the testator says: "This property I hereby entrust to my two eldest sons and to their brothers, in the event of their death, to be sacredly kept and safely invested for the sole and exclusive use of my two daughters, Fidelia and Lavinia, and for their children, if they marry and have descendants; if they should not marry, or marry and die without child or children, my will is that this portion of my estate hereby entrusted to my sons for the benefit of their sisters, should, at their death, revert to my children who may survive, or to the descendants of their children, and be equally divided between them."

The testator left six children surviving him, one of whom, Dr. Montgomery Johns, died before Lavinia, leaving children; Fidelia died without issue subsequent to the death of the testator; and Lavinia died in October, 1896, unmarried and without issue. The question therefore is to whom Lavinia's share goes; do the children of the testator living at the time of her death take, or are the children of Dr. Montgomery Johns entitled to take what would have been his share had he survived Lavinia.

The primary question is, to what period do the words in the clause quoted "to my children who may survive or to the descendants of their children to be equally divided between them," relate; in other words, is the period of survivorship to be referred to the death of the testator, or to the death of Lavinia?

In the absence of controlling words elsewhere in the will (and I find no such words in the will now under consideration) the rule is that the period of survivorship is only referable to the death of the testator when there is no other period to which it can be assigned; but where a life estate is first created, then the words of survivorship have reference to the death of the life-tenant.

Engel vs. State, etc., 65 Md. 529.

Reiff vs. Streit, 54 Md. 300.

Even without this settled rule of construction, it would seem clear, in this case, that where the clause in controversy could only be called into existence by the contingency of Lavinia dying without children, the time when the devises over should take effect must necessarily refer to the time when the contingency happened and the clause should be called into operation.

Upon the death of Lavinia, therefore, only the children of the testator then surviving could take, unless the words "or to the descendants of their children to be equally divided between them," can be construed so as to give the share of Dr. Montgomery Johns to his children, in their respective capacity.

The words as used are concededly meaningless, without taking great liberties with the words of the will by alteration, addition or transportation. In behalf of the surviving children of the testator, it is contended that if it is necessary to construe these words at all, the "descendants of their children" must mean the descendants of the children of Lavinia; and as she died without children, the contingency upon which they were to take has never happened. This is worked out upon a theory of transposition of clauses to which, in view I take of the case, it is unnecessary to further refer. On behalf of the children of Dr. Montgomery Johns, it is contended that the words mean that the descendants of a deceased child were to stand in the shoes of their ancestors and take the same share as their parent would have taken had he survived Lavinia.

However natural it would have been for the testator to have made this latter provision, it is clear that a construction to enforce it cannot be made without doing great violence to the language of the will. The word "or" would have to be construed to mean "and"; the clause "to the descendants of their children" would have to be amended by substituting for the words "their children" the words "my children who have survived me, but died before my daughters," or words of similar import; and would besides have to have added to it by appropriate amendment some words to indicate that the children of a deceased child should take that child's share, for the language used gives the property to the testator's "children, or the descendants of their children, to be *equally divided between them,*" i. e., they were to take *per capita* and not *per stirpes.* Now, while the use of the word "or," according to its primary and general meaning as a disjunctive, may sometimes be disregarded, and a

transposition of the words of the testator or even an addition to his words, in extreme cases, may be allowed; yet this is only done when it is necessary to carry out the plain, unequivocal and overruling intention of the testator. In this will no such intent appears; it can only be imported into the will by first making the substitutions and additions suggested; and in fact rests upon nothing except the general idea, altogether apart from the words of the will, that a testator would naturally desire the descendants of a deceased child to take the share of their parent. It is possible that the testator might have wished this, and had he foreseen the event of one of his children surviving him and dying before his daughter, he might have so framed his will as to give the descendants of such child the share their deceased parent would have taken; but he has not done so; and the Court cannot do violence to the express language of the testator, and substitute so much additional language as would be necessary to carry out the construction contended for, in order to supply any supposed wish; to do so would be to make a will for him.

Unless all of the changes I have suggested are made, it is, I think, clear that the children of Dr. Montgomery Johns cannot share in the estate; and I submit that no case can be found to justify the Court in taking such liberty with the language of a will as would be necessary to effectuate an intention so wholly vague and unsupported by any suggestion in the words of the will itself.

If this conclusion is sound, then there is no reason why the clause should not be construed according to the natural meaning of the words, as far as they are intelligible; and in so doing, the word "or" should be given its natural and usual signification as a disjunctive pronoun; and if so, then the gift over "or to the descendants of their children," imports a substitution, and can only take effect after the failure of the entire class to whom it was first limited. In other words, it was to go first to the children of the testator who survived Lavinia: and only in the event of there being no survivor, then "to the descendants of their children." As several children did so survive, they took the estate absolutely, *per capita*, according to the words of the will providing the manner of its distribution. It

is therefore unnecessary to attempt to construe the substitution clause in favor of "the descendants of their children"; as it could be brought into operation only in the event that no child survived Lavinia, a contingency now impossible to happen.

Reiff vs. Streit, 4 Md. 300.

Whether that substitutional limitation over was void as imputing an indefinite failure of issue, or as meaningless, it is unnecessary to inquire; as it is well settled that where an absolute gift to the first taker is good, it is not affected by a subsequent void devise over.

Goldsborough vs. Martin, 41 Md.

Heald vs. Heald, 56 Md.