ZELLER, GUARDIAN *v.* McGUCKIAN

[No. 120, October Term, 1947.]

 

*Decided April 1, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*James C. Morton, Jr.,* with whom was *John G. Rouse,
Jr.,* on the brief, for the appellant.

*George B. Woelfel* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for
Anne Arundel County construing the will of Thomas
McGuckian, deceased, and ordering the distribution of
his estate.

The will was executed May 30, 1921, when he was 58
years old. He died September 9, 1921, and was survived
by his wife, Maggie McGuckian, aged 63, and a son,
George, a disabled war veteran, aged 31.

The will, which was probated in the Orphans' Court
of Anne Arundel County, leaves all of the real estate

and personal property of the testator to his wife "for and during her natural life." Then follow the two paragraphs which are now in question:

"Second. After the death of my wife, I give, bequeath and devise all of said property, not having been previously disposed of by my executors, hereinafter named, to my son, George McGuckian, or in case of his death to his issue, if any.

"Third. In the event that my son, George McGuckian, should die without issue I give, bequeath and devise all of the aforesaid property, not having been previously disposed of, to my nephew, George Zeender, absolutely."

The fourth paragraph appoints Charles F. Lee and Winson G. Gott, of Annapolis, as the executors of the estate, with power, in their discretion, to manage, mortgage, lease, sell, or in any other manner dispose of any of the property. The estate consisted principally of a valuable tract of 27.43 acres of land situated at Annapolis, which was subject to two mortgages totalling $9,300. The testator also left considerable unsecured indebtedness.

Lee and Gott, executors, subdivided the tract of land as a residential development of the city of Annapolis, and sold a number of lots under authority of the Orphans' Court. Gott died in 1927. In 1932 Lee, the surviving executor, sold a lot to the Board of Education of Anne Arundel County, but the board refused to consummate the transaction on the ground that the power of sale conferred by the will upon the executors was exhausted after they had sold a sufficient amount of land to pay the testator's debts, and therefore they could not any longer convey a marketable title. Thereupon the testator's widow, her son George and his wife, and George Zeender and his wife petitioned the Circuit Court to assume jurisdiction of the trust created by the will. The Court assumed jurisdiction and appointed Lee as trustee to administer the trust. On November 29, 1932, the petitioners executed a deed of trust conveying all that was left of the 27.43-acre tract to Lee as trustee.

It also appears that McGuckian and his wife owned a tract of 188.25 acres of land, subject to a mortgage for $20,000. This tract was owned by them as tenants by the entireties, and hence upon McGuckian's death it became the property of his widow, subject to the mortgage. It was believed that the testator was under the impression that this tract was titled in his name alone, and to carry out that idea Mrs. McGuckian in 1923 conveyed the tract to Lee and Gott as trustees under a trust similar to that created by the will. On March 29, 1933, Mrs. McGuckian and Lee, as surviving executor, conveyed to Lee, as trustee, all that remained of the 188.25-acre tract, and the Court assumed jurisdiction of that trust also. Lee has been acting as trustee ever since, and it appears that the trust funds and investments and the real estate which still remains unsold have an aggregate value of approximately $100,000.

Mrs. McGuckian died February 26, 1935. But although she was only the life tenant, it was not until 1946, more than 11 years afterwards, that her son petitioned the Court to order the termination of the trust and distribution of the corpus. George was unmarried and living with his parents at the time his father made his will, but he married afterwards and now has three children, one of who is over the age of 21. Accordingly, after George brought the instant suit, the Court appointed J. Henry Zeller guardian *ad litem* for the two infant children. Finally, on August 18, 1947, the Court passed a decree terminating the trust and ordering the trustee to distribute the estate. From that decree this appeal was taken by the guardian *ad litem*.

In this case the testator made alternative gifts in remainder. Where two alternative gifts are preceded by a life estate, the alternative words of the gift are applied to the event of the death of the first legatee occurring before the period of possession or distribution as fixed by the will. The first legatee surviving that period becomes absolutely and indefeasibly entitled; but if he should die before that period, his previous investiture of

title becomes divested, and those intended to take by the alternative gift become vested with the estate by way of substitution. *Reiff v. Strite,* 54 Md. 298, 303. We think it is clear from the language of the will that it was the testator's intention that if his son survived the life tenant, he would be entitled absolutely to the entire estate. In case of his death before the death of his mother, the life tenant, the property would vest in his issue, if any; but in the event that he should die without issue, then the estate would go to Zeender. In other words, the time of vesting was deferred only until the death of the life tenant.

It was contended by the guardian *ad litem* that the will gave the testator's son merely a life estate, and that his three children are entitled to the remainder interest. It is a fundamental principle in the construction of wills that the intention of the testator should be carried out whenever it can be done without violence to the language employed. There is no question that the primary concern of the testator in this case was to provide for his widow and for his only son, who was almost totally blind as the result of injuries sustained in the First World War. The testator was heavily in debt, and since his estate consisted almost exclusively of land, which however had great potential value, he left the property in charge of Lee, a real estate broker, and Gott, a lawyer of Annapolis. The guardian *ad litem* argued that it could be inferred from that arrangement that the testator intended his son to have only a life estate. But if this were true, and he should leave no children, the entire estate would go to Zeender, who lived in Connecticut but has since died. It was also suggested that the fact that the son did not make any effort to terminate the trust until more than 11 years after his mother's death bears out that inference. We are of the opinion, however, that the entire corpus of the estate vested in the testator's son upon the death of Mrs. McGuckian on February 26, 1935. The will was prepared by a lawyer, who knew the simple language required for creating a life estate. By the first

paragraph of the will, the testator gave his entire estate to his widow "for and during her natural life." It is logical to believe that if he had intended to give his son only a life estate, he would have said so as he did in the first paragraph.

For these reasons we will affirm the decree ordering Lee, as trustee, to convey to George McGuckian (1) the corpus of the estate passing under his father's will, and (2) all the property conveyed by Mrs. McGuckian and Lee, as surviving executor, to Lee, as trustee, by deed dated March 29, 1933.

*Decree affirmed, the costs to be paid out of the estate.*