No. 84-289

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

GEORGE ORLANDO, as Personal Representative
of the Estate of FRANK A. DONNES, Deceased,

Plaintiff and Appellant,

-vs-

LEE PREWETT and BARBARA PREWETT, husband
and wife,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Treasure,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kelly & Halverson, P.C.; Sheehy, Prindle & Finn,
Billings, Montana

For Respondent:

Dunaway & O'Connor; Vicki W. Dunaway, Billings,
Montana

---

Submitted on Briefs: April 25, 1985

Decided: September 9, 1985

Filed: SEP 9 1985

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court, Thirteenth Judicial District, Treasure County, Montana. The lower court ordered specific performance of two oral agreements entered into between Lee and Barbara Prewett, respondents (hereafter referred to as "Prewetts"), and Frank A. Donnes, deceased. George Orlando, as personal representative of the Estate of Frank A. Donnes, appeals from that order. This case is remanded to comply with this opinion.

Frank A. Donnes owned a ranch ("Donnes ranch") in Treasure County. He was raised on a portion of the property contained in the ranch and lived most of his adult life thereon. He was once married but his wife died young and without children. Some years prior to his death, Mr. Donnes ceased operating the ranch himself and leased it under a cash rental agreement. He continued to live on the ranch, however, and to have the use of the buildings and to run a few cattle. This particular lease arrangement terminated in 1978 and from that time until 1980 Mr. Donnes resumed sole responsibility for operating the ranch.

In May of 1980 Mr. Donnes, advancing in years and having grown tired of working the ranch himself, approached his niece, Barbara Prewett, and asked if she and her husband Lee would be interested in moving to the ranch and operating it. Thereafter the Prewetts met with Mr. Donnes and reached an oral agreement wherein it was agreed that if the Prewetts moved to the Donnes ranch and leased the same for $18,000 per year, Mr. Donnes would leave the Prewetts an undivided one-half interest in the ranch and give them the option of

purchasing the other half at an appraised value at the date of his death. As a result of this agreement the Prewetts bought a trailer-home and moved to the Donnes ranch in July of 1980. They testified that they would not have moved to the ranch and assumed the duties of running it if there had not been the agreement with Mr. Donnes described above.

In May of 1982, Lee Prewett and Mr. Donnes made an oral agreement for the sale of certain items of Mr. Donnes' personal property. On or about September 9, 1982, Frank Donnes was murdered. No lease payment on the ranch or payment on the purchase price of the personal property had been made to him at the time of his death.

A short period of time passed before the duly executed last will and testament of Frank A. Donnes was discovered in the home of one of his sisters in the State of Washington. Helen Carbone and Mabel Orlando, sisters of Mr. Donnes were named under the will as sole devisees of his entire estate. On November 16, 1982, appellant George Orlando filed this will with the Treasure County Clerk of Court along with a petition for formal probate. On January 8, 1983, the Prewetts filed creditor's claims wherein they demanded specific performance of the oral agreements made between them and Mr. Donnes. On January 19, 1983, the will of decedent was admitted to formal probate as the valid last will and testament of Frank A. Donnes.

On January 24, 1983, George Orlando, appellant, having been appointed personal representative of the Frank A. Donnes estate, filed notice of disallowance of the creditor's claims and instituted an action to quiet title against the Prewetts in and to the Donnes ranch and certain personal property. The Prewetts counterclaimed for specific performance of the

3

two oral agreements set forth in their creditor's claims. A bench trial was held beginning on November 7, 1983 and on April 17, 1984, the District Court ruled in favor of the Prewetts.

The dispositive issue presented by this appeal is whether the oral agreements entered into between the Prewetts and Mr. Donnes are enforceable?

The parties to this appeal disagree over the nature of the oral agreement for the transfer of real property. Appellant contends that the agreement constituted a contract to make a will or devise; the Prewetts argue that the agreement was for the leasing, sale, and purchase of the Donnes ranch. The lower court was in accord with the Prewetts. Paragraphs 5 and 7 of its Conclusions of Law read as follows:

> 5. That the agreement between decedent and the Prewetts, as herein set forth in Conclusion No. 1, above, was an agreement for the leasing, sale and purchase of real property and, therefore, is specifically covered by Sections 30-11-111, 70-20-101, and 70-20-102, which authorize the Court to compel the specific performance of an oral agreement for the leasing, sale and purchase of real property in case of part performance thereof.
>
> . . .
>
> 7. That Section 72-2-105 requires a contract to make a Will or devise or not to revoke a Will or devise or to die intestate to be in writing, and even assuming this statute to be applicable to the instant case, which the Court concludes it is not, it is a statute of frauds provision, and part performance thereof will remove the same from the operation of the statute.

We disagree with these conclusions and find them inexplicable in light of paragraph 13 of the lower court's

4

own findings of fact. In crucial part that paragraph reads as follows:

> . . . Thereafter, in May of 1980, decedent contacted his niece, Barbara Prewett, one of the defendants herein . . . and asked whether or not she and her husband would be interested in moving to the ranch and operating it. As a result of the inquiry, the defendant, Lee Prewett, husband of Barbara Prewett, met with decedent and discussed the possibility of working out an arrangement relative to the Donnes Ranch. A few days later a second meeting occurred, at which time the parties reached an oral agreement whereby the parties agreed that if the Prewetts moved to the Donnes Ranch and leased the same for $18,000.00 per year annually, . . . that upon his death decedent would leave unto the Prewetts an undivided one-half interest in the Donnes Ranch and the Prewetts would have the right to purchase the other one-half of the Donnes Ranch at an appraised value as of the date of death. (Emphasis added.)

Further, in paragraph one of its conclusions of law the lower court restates the terms of the agreement:

> 1. That in May, 1980, decedent and the Prewetts entered into an oral agreement whereby they agreed to move to the Donnes Ranch and lease the Donnes Ranch from decedent for the remainder of his lifetime for consideration, initially, of $18,000.00 annually, and decedent agreed to give an undivided one-half interest in the ranch to them at the time of his death and provide them with the right to buy the other one-half interest in the ranch at the appraised value as of the date of his death.

Given the findings of fact, which are amply supported by the record and not challenged by either party to this appeal, it could not be more clear that the Prewetts and Mr. Donnes entered into an oral agreement for the disposition of certain of Mr. Donnes' property at his death. The vehicle for making this disposition was to be either a will or a grantor trust. But despite the formalities that were

contemplated it is not challenged that the intent of the oral agreement was that Frank Donnes should leave real property to the Prewetts at his death. The District Court committed error, and contradicted its own findings of fact, when it concluded that the oral agreement was for the leasing, sale and purchase of real property and therefore was covered by §§ 30-11-111, 70-20-101 and 70-20-102, MCA. Section 72-2-105, MCA, is the clearly applicable statute to the facts of this case and provides in pertinent part as follows:

> Contracts concerning succession. (1) A contract to make a will or devise or not to revoke a will or devise or to die intestate, if executed after July 1, 1975, can be established only by:
>
> (a) provisions of a will stating material provisions of the contract;
>
> (b) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
>
> (c) a writing signed by the decedent evidencing the contract.

In the present case (1) there is no provision in decedent's will stating material provisions of the contract; (2) there is no reference, express or otherwise, in decedent's will to a contract; (3) there is no writing signed by the decedent evidencing the contract. The agreement between the Prewetts and Mr. Donnes by which the Prewetts were to receive half the ranch and first option to purchase the other half at the death of Mr. Donnes does not conform in a single particular to the requirements provided by statute for the enforcement of such an agreement. Therefore the agreement must fail.

The Prewetts argue that, even if § 72-2-105, MCA, is applicable in the present case, its requirement that there be a writing signed by the decedent is a statute of frauds

6

provision, and part performance defeats the operation of the statute of frauds. Therefore, the Prewetts continue, since they performed their part of the agreement by moving to the ranch and assuming its operation, the agreement should be enforced despite the statutory requirement of a writing. We reject this argument for the following reasons.

First, the wording of § 72-2-105, MCA, is absolute. A contract concerning succession can be established "only" by meeting certain requirements. "Only" has a plain and unambiguous meaning. We will not graft an exception on to a statute when the language does not allow for an exception. The Prewetts would have us analogize § 72-2-105, MCA, to § 70-20-101, MCA, which requires a writing for the transfer of an interest in real property, and § 30-11-111, MCA, which requires that a contract for the sale of real property be in writing. However, a part performance exception to the writing requirement of these two statutes is specifically provided for in the code. There is no such exception specifically provided to § 72-2-105, MCA.

Second, we have not been able to discover authority from any jurisdiction that has adopted the Uniform Probate Code with a succession contract provision identical or similar to § 72-2-105, MCA, holding that an oral contract to make a will or devise can be enforced on the basis of a part performance exception to the statute of frauds. The authority and commentary we can find provides the opposite. In First Gulf Beach Bank and Trust Co. v. Grubaugh (Fla.App. 1976), 330 So.2d 205, the District Court of Appeals of Florida interpreted Florida Statute §731.051 (1971), which reads in part as follows:

7

> 731.051 Agreements to make a will, requirements.
>
> (1) No agreement to make a will of real or personal property or to give a legacy or make a devise shall be binding or enforceable unless such agreement is in writing signed in the presence of two subscribing witnesses by the person whose executor or administrator is sought to be charged.

In rebutting the argument that part performance shall take an oral agreement to devise real property out of the statute of frauds, the Florida Court quoted approvingly from a previous case:

> "[Section 731.051] is part of the Florida Probate Law, and, as in the case of wills where the statutory requirements for a valid will must be met in order for it to be admitted to probate, the statute in question prescribes requirements which are necessary for an agreement to make a will, in order for such an agreement to be valid and enforceable in Florida. To hold that part performance by the promisee of an otherwise unenforceable agreement to make a will would make it enforceable against the executors of the promisor would defeat the purpose and intent of the legislation. This is so because in most instances where a person enters into an agreement with another to make a will containing devises or bequests to the latter, it is done in return for some consideration supplied by, or undertaking on the part of the other person, such as to care for the promisor, and in most such instances there is performance, or some performance by the promisee. But it was for the purpose of precluding the enforceability of agreements of that kind, unless they were in writing and with subscribing witnesses, that §731.051 was enacted."

First Gulf Beach Bank and Trust Co. v. Grubaugh (Fla.App. 1976), 330 So.2d at 210.

Though the Florida statute in question was adopted before the drafting of section 2-701 (72-2-105, MCA) of the Uniform Probate Code, we believe that the same reasoning animates both. One commentator has provided the following

8

background and explanation of section 2-701, UPC (72-2-105, MCA):

> One of the most common problems concerned with succession contract is whether oral succession contracts may be proved . . . Because the Statute of Wills is not applicable, in most states the basic question then has been the applicability of the Statute of Frauds.
>
> Unless the state has a specific provision dealing with succession contracts which adequately limits the proof of oral succession contracts, the Statute of Frauds has not constituted a significant limitation on the proof of these oral contracts. Even where the Statute of Fraud's provision concerned with the sale of real estate has been held to be applicable to succession contracts dealing with transfers of real estate, the courts have applied exceptions to the statute such as part performance and other presumptions to circumvent the Statute's proof restriction and permit the oral contracts to be proved. Depending upon one's viewpoint toward formality requirements, this circumvention of the Statute of Frauds may or may not be beneficial. Notwithstanding this value judgment, the ineffectiveness of the Statute of Frauds as a bar to proof of succession contract has significantly encouraged litigation over these matters.
>
> . . .
>
> Clearly, this provision [2-701, UPC; 72-2-105, MCA] is intended to substantially limit the proof of succession contracts and to wash away all of the authority and decisions dealing with the application of the Statute of Frauds and its exceptions. As with the adoption of any new formalistic requirement, the expectations of some persons will be destroyed. Considering that one of the parties to the contract is no longer available to testify, however, it would appear to be good public policy to require some form of written evidence that the contract actually exists.

Lawrence H. Averill, Jr., Uniform Probate Code in a Nutshell, § 11.01 (1978).

We do not agree with the statement in the Prewetts' brief that "[t]here is no sound argument why the doctrine of part performance should apply any less to Section 72-2-105, M.C.A., than it would to any other provisions of the Statute of Frauds which are scattered throughout our Code as Montana has always followed this doctrine." In addition to the sound argument provided by the Florida court and the learned commentator quoted above, we note this additional rationale for not allowing a part performance exception to § 72-2-105, MCA.

> The many opportunities for fraud and perjury in establishing an oral testament of personal property led to the provision of the statute of frauds which regulates nuncupative testaments. Likewise, the many opportunities which exist for fraud and perjury in establishing an oral contract to make a testament, have led some states to enact statutes which deal with contracts to make testaments; and these statutes usually provide that contracts to make testaments must be in writing or must be proved by writing . . .
>
> Written evidence is more necessary in contracts of this sort than in the classes of contracts covered by the ordinary provisions of the statute of frauds. An unscrupulous claimant, who can secure perjured evidence, can set up and prove an oral contract. The death of the promisor makes it impossible to contradict the testimony to the effect that he made such promise; and the fact that the transaction never happened makes it all the harder to disprove it if the guilty parties have been careful to make their story fit the possibilities of time and place. In spite of the fact that it also operates to the detriment of an ignorant or confiding promisee, legislation of this sort should be adopted generally.

1 Bowe-Parker, Page on Wills § 10.10.

We have recognized before that contracts to make wills are looked on with disfavor because at the time of

enforcement one of the parties is dead and obviously cannot confirm or deny the existence of the contract. Lazetich v. Miller (Mont. 1983), 671 P.2d 15, 40 St.Rep. 1626; Craddock v. Berryman (1982), 198 Mont. 155, 645 P.2d 399. It was to tighten the methods by which such contracts could be proved that section 2-701, UPC was drafted and adopted in Montana as 72-2-105, MCA. To recognize a part performance exception to this statute would once again create the uncertainties and litigation that the statute was designed to reduce and eliminate. Accordingly, the appellant is entitled to a judgment quieting title to the real property involved in this action. The oral agreement between the Prewetts and Mr. Donnes for the making of a devise is without force and effect, and the judgment of the lower court on this issue is hereby remanded to comply with this opinion.

The judgment of the District Court is reversed and the case is remanded to comply with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices