No. 03-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 213

IN THE MATTER OF THE ESTATE

OF KEITH P. BRAATEN,

     Deceased.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DP 2002-33,
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Joseph T. Swindlehurst, Huppert, Swindlehurst & Woodruff, P.C.,
Livingston, Montana

     For Respondent:

          Karl Knuchel, Attorney at Law, Livingston, Montana
Great Falls, Montana

Submitted on Briefs:  August 22, 2003

Decided:  August 17, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Barney Braaten, the Personal Representative of Keith P. Braaten's estate, appeals the order filed on March 13, 2003, in the Sixth Judicial District Court, Park County, granting judgment in favor of Herman Braaten against the estate. We reverse the District Court's order.

¶2 The following issue is dispositive on appeal:

¶3 Did the District Court err in granting Herman's claim for personal services provided to the decedent without finding a written agreement for payment of the services?

BACKGROUND

¶4 Keith P. Braaten (Keith) died on June 18, 2002. In his will dated May 18, 1988, he left his entire estate to his son Barney Braaten (Barney), who also serves as the personal representative for the estate.

¶5 For roughly twelve years prior to Keith's death, his stepson, Herman Braaten (Herman), and Herman's family cared for Keith and his residence. Keith was infirm and cantankerous, yet Herman and his family fed Keith, painted his house, tended the yard, took him to the doctor, bathed him, took him to the grocery store, cared for his dog, cleaned his carpet, and dug a well on his property, among other chores. Herman maintains that Keith promised to leave the house to him upon his death and that this promise motivated him to attend to Keith and his property.

¶6	Barney lived in Texas, had not visited Montana for nearly a decade, and relied on Herman to tend to his father's needs. After Keith's death, Barney gave Herman several items from Keith's estate, but he sold the house for $65,000 and retained the proceeds in the estate.

¶7	Herman brought a claim against the estate initially for possession of the house, but once the house was sold, he sought monetary compensation for the value of the services he had provided Keith over the years. Herman argued that, had Keith not repeatedly promised to leave him the house, he and his family would not have provided the services that they did, but he did not claim fraud.

¶8	The District Court entered a judgment awarding Hermann $44,100 for the value of his services, determining that Keith knowingly falsely induced Herman to serve him by promising to leave Herman his home. Barney, as representative of the estate, now appeals.

STANDARD OF REVIEW

¶9	"We review a district court's findings of fact to determine whether the findings are clearly erroneous." *Baltrusch v. Baltrusch*, 2003 MT 357, ¶ 23, 319 Mont. 23, ¶ 23, 83 P.3d 256, ¶ 23. "A district court's findings are clearly erroneous if substantial credible evidence does not support them, if the trial court has misapprehended the effect of the evidence or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed." *Ray v. Nansel*, 2002 MT 191, ¶ 19, 311 Mont. 135, ¶ 19, 53 P.3d 870, ¶ 19. "We review a district court's conclusions of law for correctness." *Baltrusch*, ¶ 23.

3

DISCUSSION

**¶10** ***Did the District Court err in granting Herman's claim for personal services provided to the decedent without finding a written agreement for payment of the services?***

**¶11** Barney focuses his argument on our line of cases holding that personal services provided to a decedent by a relative or other person in a special relationship to him are presumed to be gratuitous. However, we find a straightforward application of § 72-2-534, MCA, which Barney also raises, to be dispositive. That statute reads:

> **72-2-534. Contracts concerning succession.** (1) A contract to make a will or devise or not to revoke a will or devise or to die intestate, if executed after July 1, 1975, may be established only by:
> (a) provisions of a will stating material provisions of the contract;
> (b) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
> (c) a writing signed by the decedent evidencing the contract.
> (2) The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

**¶12** Barney correctly notes that in *Orlando v. Prewett* (1985), 218 Mont. 5, 705 P.2d 593, this Court held that "the wording of [§ 72-2-534, MCA] is absolute" and that a contract for a devise can be established *only* by a written document. *Orlando*, 218 Mont. at 10, 705 P.2d at 596. There, the Prewetts claimed that the decedent made an oral promise to leave a one-half interest in his ranch to them and to allow them to purchase the other half at its appraised value at the time of his death if they would move in and rent and operate the ranch in the meantime, which they did. The Prewetts argued that the statute's "requirement that there be a writing signed by the decedent is a statute of frauds provision, and part performance defeats the operation of the statute of frauds." *Orlando*, 218 Mont. at 10, 705 P.2d at 596. This Court disagreed with their argument and reversed the District Court for two reasons: (1) the

4

statute was plain and unambiguous, and (2) no other jurisdiction that had adopted a similar statute had carved out a statute of frauds exception. *Orlando*, 218 Mont. at 10, 705 P.2d at 596. We noted that the public policy behind the statute was to discourage false post-mortem claims based upon oral promises, "[i]n spite of the fact that it . . . operates to the detriment of the ignorant or confiding promisee . . . ." *Orlando*, 218 Mont. at 12-13, 705 P.2d at 598.

¶13 In the instant case, the District Court's judgment in favor of Herman is understandable given the equities of the case. Nonetheless, § 72-2-534, MCA, bars oral contracts to make a devise unless evidenced by means of the specified kinds of writing.

¶14 After the sale of the house, Herman dropped his attempt to enforce a contract to make a devise and re-pled a quantum meruit claim for compensation for the value of services provided. In doing so, Herman was then faced with the principle that personal services provided to a decedent by a relative or other person in a special relationship to the decedent are presumed to be gratuitous. *See In re Estate of Orr*, 2002 MT 325, 313 Mont. 179, 60 P.3d 962; *Neumann v. Rogstad* (1988), 232 Mont. 24, 757 P.2d 761; and *Donnes v. Orlando* (1986), 221 Mont. 356, 720 P.2d 233. However, the record demonstrates that Herman's effort to rebut the presumption was premised entirely on evidence of Keith's oral promise to leave him the house. Thus, the framing of his claim in quantum meruit did not change the quality or character of evidence upon which he bases that claim, which clearly runs afoul of the prohibition against oral contracts for a devise set forth in § 72-2-534, MCA.

¶15 Herman and his family had only oral promises that Keith would leave Herman the house upon his death. No writing of any kind verified the promises, and Herman presented

no evidence that anything besides the transfer of the house to Herman upon Keith's death would compensate Herman for the services he provided. If Herman and Keith indeed had an agreement, it was a purely oral contract to make a devise, which is specifically barred by § 72-2-534, MCA. Therefore, we conclude that Herman and Keith did not have an enforceable contract, and the District Court erred as a matter of law by granting Herman's claim.

¶16 Reversed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

6